UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURTIS SMITH, | : |
| | : |
| Plaintiff | : No. 4:CV-06-1879 |
| | : |
| vs. | : (Complaint Filed 9/25/06) |
| | : |
| | : (Judge Muir) |
| C.O. O'BOYLE, <u>et al</u>., | : |
| | : |
| Defendants | : |

**ORDER**

May 10, 2007

**BACKGROUND**

Plaintiff, Curtis Smith, an inmate confined in the Mahanoy State Correctional Institution, Frackville, Pennsylvania ("SCI-Mahanoy"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983. He complains that defendants have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. (Doc. No. 1, complaint). Named as defendants in the complaint are Jeffrey Beard, Secretary for the Pennsylvania Department of Corrections; and the following SCI-Mahanoy employees: Nurse Dougherty; Alice Chipriano, Nurse Supervisor; Marva Cerullo, Health Care Administrator; Edward Klem, Superintendent; Edward

Martin, Superintendent's Assistant; C.O. O'Boyle; and Dr. Modery.  Presently before the court is defendants' motions to dismiss the plaintiff's complaint. (Doc. Nos.  12, 15).  The motions are fully briefed, and are ripe for disposition.  For the reasons set forth below, defendants' motions to dismiss will be granted.

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims that fail to assert a basis upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.  Langford vs. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami vs. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action."  Id.  The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set

of facts that could be proved consistent with the allegations." Swierkiewicz vs. Sorema N.A., 534 U.S. 506, 514 (2002). Consistent with these principles, the court must grant leave to amend before dismissing a claim that is merely deficient. See Shane vs. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**Factual Allegations of Plaintiff's Complaint**

Plaintiff states that "on February 7, 2006 at 11:00 p.m., plaintiff got down from his bunk to urinate and couldn't" because he "felt severe pain above his pelvic area and his lower back." (Doc. No. 1, complaint). Plaintiff "immediately pushed the call button for the officer on duty (O'Boyle) and requested to see a doctor." Id. Plaintiff claims that defendant O'Boyle "said he would call medical." Id.

At approximately 12:05 a.m. on February 8, 2006, plaintiff "again pushed the call button for O'Boyle and conveyed again his need to see a doctor." Id. O'Boyle stated that "'he had called medical'." Id.

At approximately 1:20 a.m. on February 8, 2006, a third call was made to O'Boyle requesting to see a doctor. Id. At approximately 1:28 a.m. on February 8, 2006 "two officers removed plaintiff from his cell and carried him to the CO's

3

station where Nurse Dougherty questioned him and escorted him to medical." Id.   At medical Nurse Dougherty "called the physician (Modery) who allegedly ordered her to continue to monitor plaintiff's condition." Id.  Plaintiff claims that no medication was administered.

At approximately 2:30 a.m. on February 8, 2006, "Nurse Dougherty again called the physician on call who allegedly ordered that plaintiff be transported to the hospital." Id. At approximately 3:46 a.m. on February 8, 2006, plaintiff "departed the facility for the hospital," where after an examination "plaintiff was diagnosed with having kidney stones/colic and hyperthyroidism." Id.

On February 16, 2006, plaintiff filed Grievance No. 144238 "as a result of the 4 hour and 46 minute delay in obtaining emergency medical treatment." (Doc. No. 1, Ex. A, grievance). The grievance was received on February 17, 2006, by Grievance Coordinator Ed Martin. Id.   On February 18, 2006, Nurse Supervisor Alice Chipriano responded to plaintiff's grievance with the following:

> Medical received the call from your block at 0120 on 02/08/06.  I've reviewed the documentation on your medical record and you were in pain.  The nurse

4

> brought you to medical and called the physician on call. She gave the medication the physician ordered and continued to monitor your condition. The nurse again called the physician at 0230, that is when the physician ordered you be transported to the hospital. You were transported to the hospital with security in a state vehicle. Your treatment was appropriate and timely.
>
> Kidney stones/colic is very painful, however, the nurses actions were appropriate. I checked the block book to try to verify your allegations, there is no documentation that medical was called at 11:00 p.m. Therefore your grievance is denied.

(Doc. No. 1, Ex. B, Official Inmate Grievance Initial Response).

On March 1, 2006, plaintiff filed an appeal of the initial response to Superintendent Klem. (Doc. No. 1, Ex. C, Appeal). In a response dated March 17, 2006, Superintendent Klem remanded the grievance to Grievance Coordinator, Mr. Martin, finding that the "delayed response on the housing unit and the medical need to be more adequately addressed." (Doc. No. 1, Ex. D, Appeal Response). By Memorandum dated March 24, 2006, Grievance Coordinator Martin notified plaintiff of the remand and his forthcoming investigation and response. (Doc. No. 1, Ex. E, Memorandum).

5

On March 30, 2006, Grievance Coordinator Martin issued the following summary of his findings with regard to plaintiff's grievance:

> Superintendent Klem reviewed your appeal to this grievance and remanded it back to me for further investigation.  In the grievance you stated that at 2300 hours you "felt pain right above my pelvic area and in my lower back."  You go on to state you pushed the call button and then told the officer that you needed to see a doctor.  You further state that he said he would call Medical.  You report that at 0128 hours, CO Smith and another officer carried you to the CO station and you then fell out of the chair.  You then went to the Medical Department and to the hospital.  Finally, you state you waited 2½ hours in excruciating pain and another 1½ hours to be transported to the hospital.
>
> RNS Chipriano has previously responded to this grievance and indicates that Medical was notified of your condition at 0120 hours.  The available record clearly indicates that Medical Staff responded to B/B Unit at 0140 hours.  They also contacted the on-call physician and provided the medications prescribed by the physician.  They monitored your condition and contacted the physician again at 0230 hours.  At that point, the physician ordered that you be transported to the hospital.
>
> In your appeal, you point out that the response appears to be dated 2/10/06, six days prior to you submitting.  The grievance was received in my office on 2/17/06; therefore, it is reasonable to conclude that the date on the bottom of the Initial Response is an administrative error.  I do not believe that this date has any relevancy to the issue of the grievance.

> The basis of your appeal is the time factor between the time you claim to have informed the officer and the time that Medical Staff responded; additionally, the 1½ hours between the time you were taken to the Medical Department and then taken to the hospital. You do not identify the officer that you spoke with at 2300 hours, but I have spoken to the officer who worked the housing unit that night. CO O'Boyle advised me that he did call the Medial Department at approximately 2310 hours, again at 0015 hours and at 0120 hours. He reports that at the first two calls he was told that nursing staff were responding to the RHU for an inmate with a medical issue. CO O'Boyle also advises me that he did not witness you fall from the chair near the officer's station, as you claimed.
>
> My discussion with the Medical Professionals indicates that the 1½ hours that you were in the Medical Department is not unreasonable or excessive. The Medical Staff had to perform a triage of your condition, assess the situation and determine a preliminary diagnosis and contact the physician. Also, after administering treatment (medication), it was necessary to observe you for any reactions to the medication and also to assess the effectiveness. When the staff determined that the medication did not provide relief of your symptoms, another call was placed to the physician and the decision was made to transport you to the hospital. The record indicates that decision was made at 02:30 hours and staff were contacted to report to the institution to transport you. The record reflects that you departed the facility at 03:46 hours. While you were in significant pain, it is noted it was not a life threatening emergency.
>
> Based on the above information, I am unable to verify any staff negligence or deliberate indifference to your condition. Staff appear to have followed protocol and addressed your concerns. Therefore, I must deny your grievance.

7

(Doc. No. 1, Ex. F, Remanded Grievance Response).

On April 4, 2006, plaintiff appealed the Grievance Coordinator's Remanded Grievance Response to Superintendent Klem. (Doc. No. 1, Ex. G). In a response dated April 14, 2006, Superintendent Klem upheld the Grievance Coordinator's decision, noting the following:

> I am in receipt of your grievance appeal to this office. In evaluating your grievance appeal, I have reviewed the initial grievance; the response you received from the Grievance Officer, Nurse Supervisor Chipriano; your appeal to my office; my response to your appeal reassigning and remanding the grievance; and the response you received from the reassigned Grievance Officer, Superintendent's Assistant Edward R. Martin.
>
> After reviewing all of these documents, it is evident that the reassigned Grievance Officer has thoroughly investigated your issues and has provided you with a detailed and comprehensive response.
>
> While I understand the pain you were in while on the housing unit, it is fairly evident that Housing Unit Staff acted appropriately and that Medical Staff responded to you, subject to other issues that demanded their attention at the time.
>
> After reviewing these documents, there is no evidence of staff improprieties and I am satisfied that you have been treated appropriately by our Medical professionals.
>
> Absent information to the contrary, I must uphold the remanded/revised response from the Grievance Officer, Edward R. Martin.

(Doc. No. 1, Ex. H, Response to Official Inmate Grievance #144238).

On April 21, 2006, plaintiff sought final review by the Secretary's Office of Inmate Grievances and Appeals. (Doc. No. 1, Ex. I). On June 15, 2006, Chief Grievance Coordinator Sharon Burks, denied plaintiff's appeal to final review, finding the following:

> This is to acknowledge receipt of your appeal to final review of the above numbered grievance. As you are aware, this grievance was remanded to the institution level for additional investigation and response to the issues you raised for final review.
>
> In accordance with the provisions of DC-ADM 804. VI. D. 2, effective January 3, 2005, I have reviewed the entire record of this grievance; including your initial grievance, the grievance officer's response, your appeal to the superintendent, and the superintendent' response. I have also carefully reviewed the issues you raise to final review, as well as the response provided by officials at the institution level to our original remand action.
>
> Upon completion of this review, it is the decision of this office to uphold the responses provided by staff at the institutional level. There is no evidence to support your claim of negligence by medical staff. From the record, it appears that when Medical was initially called, medical staff was unavailable as they had responded to the Restricted Housing Unit in response to a previously reported medical problem. Since staff cannot be in two places at once, they responded to your situation as soon as they were available. Your request for $25.00 per day in

9

> restitution beginning January 1, 2006 is unwarranted and is, therefore, denied.
>
> I concur with the responses already provided at the institution level. Accordingly, your appeal to final review must be denied.

(Doc. No. 1, Ex. J, Final Review Response).

On September 25, 2006, plaintiff filed the instant action in which he seeks compensatory and punitive damages, as well as injunctive relief, for defendants' "reckless and callous indifference to plaintiff's Eighth Amendment rights by delaying emergency medical treatment" and for the "pain and mental anguish suffered by him due to the deliberate indifference and intentional misconduct of each defendant resulting from their delay in providing emergency medical treatment." (Doc. No. 1, p. 4).

**Discussion**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. See 42 U.S.C. § 1983; see also West vs. Atkins, 487 U.S. 42, 48 (1988). A prerequisite for a viable civil rights

claim is that the defendant directed, or knew of and acquiesced in, the deprivation of the plaintiff's constitutional rights. See Monell vs. Dep't of Social Serv., 436 U.S. 658, 694-95 (1978); Gay vs. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode vs. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson vs. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003).

Plaintiff's complaint against defendants, Secretary of Department of Correction Jeffrey Beard and Health Care Administrator Marva Cerullo, suffers from a lack of alleged personal involvement in the events at issue. Aside from naming Beard and Cerullo as defendants, the complaint is devoid of any allegation of personal involvement by these defendants. Instead, it appears that plaintiff seeks to impose liability upon them solely based on their supervisory roles. Liability, however, may not be imposed under Section 1983 on the principle of respondeat superior. Capone vs. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989). Rather, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they

11

knew of, participated in or acquiesced in such conduct." Id. at 106 n.7. As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal directions or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207. Thus, in the absence of any allegations of direct involvement by defendant Beard and Cerullo in the alleged improper care of plaintiff, the complaint fails to state a claim against these defendants and the court will dismiss these defendants from the action.

With respect to defendants Klem, Martin and Chipriano, the only involvement of these defendants relates to their administrative role with respect to the handling of plaintiff's grievance and appeals. To the extent Smith seeks to impose liability against these defendants for their role in denying his administrative grievances and appeals therefrom, it is well-established that prisoners have no constitutionally protected right to a grievance procedure. See Jones vs. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38

(1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson vs. Horn, 971 F. Supp. 943, 946 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998); McGuire vs. Forr, Civ. A. No. 94-6884, 1996 WL 131130, at *1 (E.D. Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. See Flick vs. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to and resolution by that procedure); see also Johnson vs. Harding, et al., Civil No. 3:CV-99-0977, slip op. at 7-8 (M.D. Pa. Feb. 29, 2000)(Vanaskie, C.J.). Accordingly, plaintiff's complaint fails to state a claim that his constitutional rights were violated because defendants failed to take corrective action with regard to his grievances.

Finally, with respect to plaintiff's allegations in inadequate medical treatment, the Eighth Amendment "requires

13

prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse vs. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)(<u>citing</u> Estelle vs. Gamble, 429 U.S. 97 (1976)). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> Spruill vs. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale vs. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective element) to (2) plaintiff's serious medical needs (the objective element).  Farmer vs. Brennan, 511 U.S. 825 (1994); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West vs. Keve, 571 F.2d 158, 161 (3d Cir. 1979).  Because only egregious acts or omissions can violate this standard, mere medical malpractice can not result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. White vs. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle vs. Gamble, 429 U.S. 97, 106, (1976). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown vs. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer vs. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer vs. Carlson, 685 F. Supp. 1335,

15

1339 (M.D. Pa. 1988). See McCracken vs. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart vs. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little vs. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer vs. Carlson, 685 F. Supp. at 1339.

The objective component of an Eighth Amendment claim, i.e., whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. Hudson vs. McMillian, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Johnson vs. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347;

Ramos vs. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), <u>cert. denied</u>, 450 U.S. 1041 (1981); West vs. Keve, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. <u>See</u> Monmouth County Correctional Institution Inmates vs. Lanzaro, 834 F.2d at 347; Archer vs. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro vs. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

Assuming, without deciding, that plaintiff's medical need was serious in the constitutional sense, the allegations in the complaint clearly illustrate that plaintiff received medical attention. The documentation attached to plaintiff's complaint reveals that within approximately ten minutes after each of the three calls plaintiff made for assistance, CO O'Boyle called the Medical Department. Unfortunately, as the plaintiff's documentation reflects, the Medical Department was responding to the RHU for an inmate with a medical issue. The Medical Department then responded to plaintiff and immediately had him moved to the Medical Department for assessment. Once in the Medical Department, the physician on call was notified and a course treatment was implemented. When plaintiff did not

17

respond to this course of treatment the physician was again called, and it was then determined that plaintiff should be transported to the hospital. Thus, the complaint reveals that the plaintiff's medical needs were attended to. At best, plaintiff's complaint demonstrates his disagreement with the treating physician's decision to attempt to treat plaintiff first, before having him admitted to the hospital. Plaintiff's disagreement with this course of treatment, however, does not serve as a predicate to liability under § 1983. See, White vs. Napoleon, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail vs. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any of the defendants intentionally withheld medical treatment from plaintiff in order to inflict pain or harm upon plaintiff. Farmer; Rouse.

Thus, the allegations contained within the complaint establish meaningful efforts by the defendants to provide plaintiff with necessary medical care, and an attendant mental state that falls substantially short of deliberate indifference.  Indeed, plaintiff's allegations of the scope and quality of medical attention that the defendants provided precludes a finding of deliberate indifference.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' motions to dismiss the plaintiff's complaint (Doc. Nos. 12, 15) are **GRANTED.**

2. The Clerk of Court is directed to **CLOSE** this case.

3. Any appeal taken from this order will be deemed frivolous, without probable cause, and not taken in good faith.

                                            s/Malcolm Muir  
                                            MUIR  
                                            United States District Judge